UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ALPHA OUSMANE BARRY, | ) |
| Petitioner, | ) ) ) |
| v. | ) )  No. 2:26-cv-00066-JRS-MKK |
| BRISON SWEARINGEN, *et al.*, | ) ) ) |
| Respondents. | ) |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS
CORPUS AND ORDERING IMMEDIATE RELEASE**

In 2023, the U.S. Border Patrol permitted Alpha Barry to enter the United States subject to an order of supervision. Two years later, U.S. Immigration and Customs Enforcement (ICE) officers arrested Mr. Barry when he reported for a check-in required by that order. He is now detained at the Clay County Jail at ICE's direction.

Mr. Barry seeks a writ of habeas corpus compelling the government to release him from detention. Mr. Barry argues that his detention violates the Constitution and laws of the United States because the government failed to abide by the process for revoking his order of supervision before arresting him. The respondents have not answered this argument. The government therefore has waived any defense to the issue, and the Court grants Mr. Barry's petition.

**I. Facts**

Mr. Barry is a native of Equatorial Guinea. He entered the United States on November 19, 2023, near Lukeville, Arizona. He did not enter through a port of entry. Dkt. 1-1 at 1.

Border Patrol agents promptly apprehended Mr. Barry, determined that he was inadmissible, and initiated removal proceedings. *Id.* However, the government did not detain Mr. Barry. Instead, the government released Mr. Barry subject to conditions of supervision and

ordered him to appear before an immigration judge in Chicago a year later. *Id.* No evidence indicates that Mr. Barry ever violated any condition of his order of supervision, that the order expired, or that the government took any step to revoke his supervised release.

On January 21, 2025, Mr. Barry reported to an ICE kiosk consistent with the conditions of his supervision. Dkt. 1-2. ICE officers arrested Mr. Barry without warning. Dkt. 10-1 at 8. ICE records appear to indicate that Mr. Barry was issued an administrative arrest warrant after he was arrested. *Compare* dkt. 1-2 (documenting check-in time between 8:00 A.M. and 12:00 P.M.) *with* dkt. 10-1 at 9 (documenting issuance of arrest warrant at 12:10 P.M.). The warrant does not appear in the record.

Mr. Barry requested that he be released on bond while his removal action continues. Immigration Judge Matthew Beese found that he lacked jurisdiction to even consider bond because Mr. Barry is statutorily subject to mandatory detention without bond. Dkt. 10-1 at 13–14. Mr. Barry is now detained at ICE's direction at the Clay County Jail.

**II. Analysis**

Mr. Barry formally asserts five separate arguments why he must be immediately released from detention. Dkt. 1 ¶¶ 42–70. All five are variations of one central argument: Mr. Barry's arrest and detention are unlawful because the government released him on an order of supervision and never revoked it. *See id.* ¶ 33 ("Accordingly, where a release notification is issued alongside an order to report to ICE using its CART kiosk for persons not subject to mandatory detention pursuant to policy . . . ICE's failure to follow that policy and practice is an *Accardi* violation."), citing *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 169 (W.D. N.Y. May 2, 2025). The respondents oppose Mr. Barry's release, but their response fails to address his revocation argument.

Accordingly, the Court grants Mr. Barry's petition and directs the respondents immediately to release him from detention.

**A.     Supervised Release and Revocation**

The parties do not dispute that certain aliens are subject to detention while awaiting removal or decisions on their removability. But the statutes authorizing that detention and the regulations accompanying them authorize immigration officials to release certain aliens, provided that they comply with specified conditions. *See* 8 U.S.C. § 1226(a)(2) (release on bond or conditional parole); 8 U.S.C. § 1231(a)(3) (supervised release after 90-day removal period); 8 C.F.R. § 236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in [8 U.S.C. § 1226(c)(1)], under the conditions at [8 U.S.C. § 236(a)(2)–(3)]."); 8 C.F.R. § 241.4(j) (authorizing conditional release). The same regulations establish procedures for revoking conditional release and returning the alien to custody. *See* 8 C.F.R. § 236.1(c)(9) ("[S]uch release may be revoked at any time in the discretion of" specified officials.); 8 C.F.R. § 241.4(l)(2) (authorizing specified officials to revoke release based on specified findings).

Federal agencies must comply with federal statutes and their own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–67 (1954). "*Accardi* and its progeny teach generally that federal agencies are required to follow their own regulations and some other formally adopted procedures, including those that govern exercises of an agency's discretion." *Zelaya Diaz v. Rosen*, 986 F.3d 687, 690 (7th Cir. 2021). The judges of this Court have consistently granted habeas relief to ICE detainees whose orders of supervision have not been properly revoked.[1]

---

[1] *See, e.g., Gil Figueroa v. Swearingen*, No. 2:26-cv-00047-JPH-MJD, dkt. 11, at *11 (S.D. Ind. Feb. 4, 2026) ("The undisputed record demonstrates that Mr. Gil Figueroa was released on his own recognizance

3

**B.     Mr. Barry's Arrest and Detention**

The evidentiary record in this case is not perfect, but it establishes that Mr. Barry was released subject to an order of supervision and that he has been arrested and detained. Moreover, Mr. Barry asserts that his order of supervision was never properly revoked, and the respondents have declined to rebut that assertion with evidence of proper revocation. Therefore, Mr. Barry has demonstrated that he is in custody in violation of the Constitution and laws of the United States and must be released.

The record does not contain an order of supervision. However, there is no dispute that Mr. Barry was apprehended by Border Patrol agents and released into the United States. Dkt. 1-1 at 1. Further, the record plainly establishes that ICE imposed a reporting requirement that obligated Mr. Barry to check in at an electronic kiosk at designated times. Dkt. 1-2. And, Mr. Barry has cited evidence that ICE uses the kiosk system to monitor compliance with supervised release:

> The CART kiosk is a self-service kiosk used by selected aliens on the non-detained docket during the automated check-in process. The kiosk contains several features, such as a touchscreen display, camera for photo capture and testing of facial verification, fingerprint scanner, printer, and the capability to support multiple languages. These kiosks will be located inside ICE ERO field offices, such as a waiting room. *CART will enable eligible aliens on the non-detained docket with*

---

on December 2, 2022, and there is no evidence that his release was revoked by an authorized official according to § 1236.1(c)(9). Applying the APA and the *Accardi* doctrine, the revocation of Mr. Gil Figueroa's release was contrary to law."); *Hernandez Duque v. Maples*, No. 4:25-cv-00231-SEB-KMB, dkt. 32, at *31 (S.D. Ind. Jan. 14, 2026) (granting immediate release because respondents failed to document that release was revoked by authorized official); *C.M. v. Maples*, No. 4:25-cv-00198-TWP-KMB, dkt. 28, at *10 (S.D. Ind. Nov. 5, 2025) ("The instant matter, on the other hand, is similar to *N.A.L.R. v. Bondi*, where the petitioner demonstrated that following her initial arrest and release subject to an OSUP, her release was never revoked by any official with authority to do so or according to the prescribed legal process. . . . Where, as here, revocation of the petitioner's release and her current detention violate the APA and *Accardi* doctrine, both must be rescinded and set aside.") (internal citation omitted); *Doe v. Crowley*, No. 2:25-cv-00480-MPB-MJD, dkt. 33, at *5 (S.D. Ind. Oct. 31, 2025) ("The Court ordered the respondents 'to file documentation that an official expressly authorized under 8 C.F.R. § 241.4(l)(1) or (2) has revoked Mr. Doe's release according to the process contained in that regulation,' or, alternatively, to release Mr. Doe from detention. . . . The respondents responded with documentation of decisions that were not made by expressly authorized officials or according to the regulatory process.") (internal citation omitted).

> *Orders of Supervision (OSUP) or Orders of Recognizance[] to check in with ERO using the kiosk rather than meeting with an ERO officer in person.*

U.S. Dep't of Homeland Security, *Privacy Impact Assessment Update for the Enforcement Integrated Database (EID)*, at 8 (Dec. 3, 2018) (emphasis added; footnote omitted) (avail. at https://www.dhs.gov/sites/default/files/publications/privacy-pia-ice-eid-december2018.pdf (last visited Feb. 18, 2026); cited at dkt. 1 ¶ 29). The record therefore demonstrates that Mr. Barry was subject to an order of supervision following his entry in 2023.

Meanwhile, the record lacks any evidence to contradict Mr. Barry's assertion that his order of supervision was never revoked through the applicable regulatory process. Indeed, the respondents do not acknowledge this argument. Instead, the government responds entirely to an argument that Mr. Barry does not make—that he may be detained but is eligible for discretionary release on bond pursuant to 8 U.S.C. § 1226(a) rather than subject to mandatory detention under 8 U.S.C. § 1225(b)(2). The respondents argue exclusively that Mr. Barry is subject to mandatory detention without bond under § 1225(b)(2) and that this Court lacks jurisdiction to review the government's decision to hold him without bond. Dkt. 10. Never mind that Mr. Barry's petition contains no mention of "bond" or "1225." Dkt. 1.[2]

"Failure to respond to an argument . . . results in waiver." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). The respondents have waived any defense to Mr. Barry's argument that his arrest and detention are contrary to law because the government never abided by its own process for revoking his supervised release. The Court therefore adopts Judge Pratt's reasoning, *see C.M.*, No. 4:25-cv-00198-TWP-KMB, dkt. 28, at *10, and finds that, with no evidence that

---

[2] The Court does not address the respondents' § 1225 argument because Mr. Barry is entitled to relief on a different basis. The Court notes, however, that it has consistently found that petitioners in Mr. Barry's position—arrested by immigration officials inside the United States years after entering the country—are eligible for discretionary release under 8 U.S.C. § 1226(a). *See, e.g.*, *Lopez-Vincente v. Noem*, No. 2:26-cv-00043-JRS-MG, dkt. 12 (S.D. Ind. Feb. 6, 2026).

any official ever took any step to revoke Mr. Barry's supervised release, the proper remedy is his immediate release from custody.

C.    **Government's Failure to Respond**

Before concluding, the Court notes that it expects respondents to respond to dispositive arguments in a habeas corpus case seeking relief from immigration detention. *See Fuentes Gomez v. Olsen*, No. 4:26-cv-00021-TWP-KMB, dkt. 10, at *4–6 (S.D. Ind. Feb. 13, 2026); *NALR v. Maples*, No. 4:25-cv-00192-SEB-KMB, dkt. 17, at *4–5, n.1 (S.D. Ind. Oct. 23, 2025). The government may of course argue why a particular argument fails, that a particular argument is not dispositive, or that different authority controls an issue. To simply state the government's preferred vision of the law without regard for the specific basis on which the petitioner seeks relief is unacceptable.

### III. Conclusion

The petition for a writ of habeas corpus is **granted**. The respondents will have **48 hours** to certify that Mr. Barry has been released from detention subject to his most recently applicable order of supervision.

To the extent the petition seeks declaratory relief, *see* dkt. 1 at 21, it is **denied as unnecessary** given his immediate release on the grounds articulated above. To the extent the petition seeks an injunction barring future detention, *id.*, it is **denied without prejudice**. If Mr. Barry is redetained, he may of course file a new petition challenging the lawfulness of his detention based on the applicable facts and circumstances. To the extent the petition seeks attorney's fees and costs, *id.*, it is **denied**. Such request must be raised by separate motion. Fed. R. Civ. P. 54(d); S.D. Ind. L.R. 54-1.

The **clerk is directed** to enter **final judgment**.

**IT IS SO ORDERED.**

Date: 2/19/2026

_____
JAMES R. SWEENEY II, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution:

Adam R Whitesel Cassingham
Scott D. Pollock & Associates
rc@lawfirm1.com

Rachel Dever
Church Church Hittle and Antrim
rdever@cchalaw.com

Scott D. Pollock
Scott D. Pollock & Associates, P.C.
spollock@lawfirm1.com

Liberty L. Roberts
Church Church Hittle & Antrim
lroberts@cchalaw.com

Shelese M. Woods
DOJ-USAO
shelese.woods@usdoj.gov